LENNON v. STILES.

(Supreme Court, Special Term, New York County. June 6, 1888.)

SPECIFIC PERFORMANCE—CONTRACT—FRAUD.

　　Plaintiff contracted with defendant, a widow in feeble health, residing in Massachusetts, through her son-in-law, to exchange two houses belonging to him for income-paying real estate. A real-estate broker had informed the son-in law that one of the houses was well rented, and had procured S., a pretended purchaser for one of the houses. The broker had gone to the son-in-law in relation to the sale to S. at the suggestion of the plaintiff. The houses were not rented, but heavily mortgaged. Held, that a specific performance of the contract would not be enforced.

Action for specific performance.

E. J. Spink, for plaintiff. Jerome Buck, for defendant.

INGRAHAM, J. In actions for the specific performance of a contract to convey land, granting the relief asked for rests in the discretion of the court, and if for any reason the contract is unfair or unreasonable, or in consequence of the relation of the parties to the contract or the circumstances of the case, an unfair advantage has been taken, or where for any reason the enforcement of the contract would be against conscience and justice, specific performance will be refused. Thus, in Seymour v. Delancy, 3 Cow. 521, SAVAGE, C. J., states the rule to be "that on the question of decreeing specific performance of executory contracts the court of chancery must exercise its discretion; not an arbitrary, but a sound judicial, discretion. If the contract be free from objection, it is the duty of the court to decree performance. But if there are circumstances of unfairness, though not amounting to fraud or oppression, or if the inadequacy of consideration be so great as to render the bargain hard and unconscionable, on either ground the court may refuse its aid to enforce the contract, and leave the parties to contest their rights in a court of law." And SUDAM, senator, says: "I also admit that the party claiming the specific performance must present a case fair, just, and reasonable; that the contract must be founded on adequate consideration; and that it must be free from

fraud, misrepresentation, deceit, or surprise." And this rule has again and again been reiterated. In *Peters* v. *Delaplaine*, 49 N. Y. 367, CHURCH, C. J., says: "The granting or withholding specific performance is within the discretion of the court. It will not be granted when it would be against conscience and justice to do so." And in *Margraf* v. *Muir*, 57 N. Y. 158, EARL, C., says: "When a contract for the sale of lands is fair and just, and free from legal objection, it is a matter of course for courts of equity to specifically enforce it. But they will not decree specific performance in case of fraud or mistake, or of hard and unconscionable bargains, or when the decree would produce injustice, or when such a decree would be inequitable under all the circumstances." In this case, a widow in feeble health was spending the summer in Massachusetts. She was the owner of real estate in New York, and depending upon the income of her property, including the premises in question, for her support. A broker suggested to her son-in-law, Cornwall, the exchange of the property for which the contract in question was subsequently made, with the knowledge of the defendant. Cornwall and the plaintiff then commenced the negotiations that led up to the contract in question. The controlling desire of Cornwall appears to have been a desire to get some money for the defendant out of the exchange, and, in order to carry out that intention, it was necessary to get a purchaser for one of the houses which plaintiff was to convey to the defendant. The firm of Darling & Schwinicke then appeared with a Mr. Sterne, as a purchaser of one of plaintiff's houses for $23,400. Sterne signed a contract to purchase at that price, which was deposited with the firm of brokers in escrow, and at the same time Sterne deposited $250 as the amount to be paid in cash on the execution of the contract. This apparently being satisfactory to Cornwall, he took the contract in question, and the contract with Sterne, to the defendant in Massachusetts. He stated to her that one of the houses could be sold for $23,400, and that the other was rented for $1,500, and finally induced her to sign the contract; she directing him not to deliver the contract in question until the money to be received by her for the house that she was about to sell to Sterne was actually paid. Cornwall then came back to New York, met the plaintiff Sterne at Darling & Co.'s office, and there finally delivered the contract to Sterne, and the plaintiff paid $350 on the contract, most of which was at once appropriated by Darling & Co. for their commission. Neither of the plaintiff's houses was in fact rented, and it is evident that Sterne never had the slightest idea of completing his contracts, or ever made the slightest effort to have the title examined, or to do anything about it. All the circumstances surrounding the transactions are extremely suspicious. The evident incapacity of Cornwall to conduct such a negotiation, the connection between the plaintiffs and the brokers who acted for Sterne, the admission by the broker that he went to Cornwall about Sterne at the plaintiff's suggestion, the action of Sterne after he had signed the contract, and many other facts, tend strongly to show that there was a combination between the plaintiff and Darling & Co. to get possession of defendant's property; but without expressly deciding that question, that there was such a fraud as would be a defense to an action at law, it is evident that this is not such a contract as the court in the exercise of its discretion should specifically enforce. Considering the circumstances of the case, the exchange was a very unfair one. Plaintiff's houses were not rented, and were producing nothing, although largely mortgaged. Defendant's house was well rented, producing a good income, and I am satisfied that plaintiff's houses were not salable at anything like the price at which they were exchanged. Plaintiff knew well the condition of the property, and it is evident that he took advantage of Cornwall's evident incapacity to get from the defendant a contract that, had she been acquainted with the circumstances, she never would have signed. Applying the rule above stated, I think it is the duty of the court to refuse specific performance, and leave the plaintiff to his

remedy at law. The equitable relief being denied, according to our practice the action may be held to enable the plaintiff to continue the action to recover his damages at law, (*Fitzpatrick* v. *Dorland*, 27 Hun, 294;) or, if the plaintiff desires, a judgment will be entered dismissing the complaint, without costs.